IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

RONNIE L., Jr.,[1]                       )
                                          )
       Plaintiff,                 )
                                          )
vs.                                       ) Civil No. 18-cv-1109-CJP[2]
                                          )
COMMISSIONER OF SOCIAL                    )
SECURITY,                                 )
                                          )
       Defendant.                 )

## **MEMORANDUM and ORDER**

**PROUD, Magistrate Judge:**

In accordance with 42 U.S.C. § 405(g), plaintiff seeks judicial review of the final agency decision denying his application for Disability Insurance Benefits (DIB) and Supplemental Security Income (SSI) benefits pursuant to 42 U.S.C. § 423.

## **Procedural History**

Plaintiff applied for benefits in May 2014. He later amended the alleged date of onset to June 16, 2014. After holding two evidentiary hearings, ALJ William E., Kumpe denied the application on May 30, 2017. (Tr. 16-33). The Appeals Council denied review, and the decision of the ALJ became the final agency decision. (Tr. 1). Administrative remedies have been exhausted and a timely complaint was filed in this Court.

---

[1] In keeping with the court's recently adopted practice, plaintiff's full name will not be used in this Memorandum and Order due to privacy concerns. See, Fed. R. Civ. P. 5.2(c) and the Advisory Committee Notes thereto.

[2] This case was assigned to the undersigned for final disposition upon consent of the parties pursuant to 28 U.S.C. §636(c). See, Doc. 9.

## Issues Raised by Plaintiff

Plaintiff raises the following issues:

1. The ALJ erred by failing to account for deficits of concentration, persistence, or pace in the RFC.

2. The ALJ erred in failing to ensure the VE's job incidence estimates were the product of a reliable method.

## Applicable Legal Standards

To qualify for DIB or SSI, a claimant must be disabled within the meaning of the applicable statutes.[3] For these purposes, "disabled" means the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A).

A "physical or mental impairment" is an impairment resulting from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. § 423(d)(3). "Substantial gainful activity" is work activity that involves doing significant physical or mental activities, and that is done for pay or profit. 20 C.F.R. § 404.1572.

Social Security regulations set forth a sequential five-step inquiry to determine whether a claimant is disabled. The Seventh Circuit Court of Appeals

---

[3] The statutes and regulations pertaining to DIB are found at 42 U.S.C. § 423, et seq., and 20 C.F.R. pt. 404. The statutes and regulations pertaining to SSI are found at 42 U.S.C. §§ 1382 and 1382c, et seq., and 20 C.F.R. pt. 416. As is relevant to this case, the DIB and SSI statutes are identical. Furthermore, 20 C.F.R. § 416.925 detailing medical considerations relevant to an SSI claim, relies on 20 C.F.R. Pt. 404, Subpt. P, the DIB regulations. 20 C.F.R. § 404.350. Most citations herein are to the DIB regulations out of convenience.

has explained this process as follows:

> The first step considers whether the applicant is engaging in substantial gainful activity. The second step evaluates whether an alleged physical or mental impairment is severe, medically determinable, and meets a durational requirement. The third step compares the impairment to a list of impairments that are considered conclusively disabling. If the impairment meets or equals one of the listed impairments, then the applicant is considered disabled; if the impairment does not meet or equal a listed impairment, then the evaluation continues. The fourth step assesses an applicant's residual functional capacity (RFC) and ability to engage in past relevant work. If an applicant can engage in past relevant work, he is not disabled. The fifth step assesses the applicant's RFC, as well as his age, education, and work experience to determine whether the applicant can engage in other work. If the applicant can engage in other work, he is not disabled.

*Weatherbee v. Astrue*, 649 F.3d 565, 568-569 (7th Cir. 2011).

Stated another way, it must be determined: (1) whether the claimant is presently unemployed; (2) whether the claimant has an impairment or combination of impairments that is serious; (3) whether the impairments meet or equal one of the listed impairments acknowledged to be conclusively disabling; (4) whether the claimant can perform past relevant work; and (5) whether the claimant is capable of performing any work within the economy, given his or her age, education and work experience.  20 C.F.R. § 404.1520; *Simila v. Astrue*, 573 F.3d 503, 512-513 (7th Cir. 2009).

If the answer at steps one and two is "yes," the claimant will automatically be found disabled if he or she suffers from a listed impairment, determined at step three.  If the claimant does not have a listed impairment at step three and cannot perform his or her past work (step four), the burden shifts to the Commissioner at step five to show that the claimant can perform some other job.  *Rhoderick v.*

*Heckler*, 737 F.2d 714, 715 (7th Cir. 1984). *See also Zurawski v. Halter*, 245 F.3d 881, 886 (7th Cir. 2001) (Under the five-step evaluation, an "affirmative answer leads either to the next step, or, on Steps 3 and 5, to a finding that the claimant is disabled…. If a claimant reaches step 5, the burden shifts to the ALJ to establish that the claimant is capable of performing work in the national economy.").

This Court reviews the Commissioner's decision to ensure that the decision is supported by substantial evidence and that no mistakes of law were made. It is important to recognize that the scope of review is limited. "The findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive. . . ." 42 U.S.C. § 405(g). Thus, this Court must determine not whether plaintiff was, in fact, disabled at the relevant time, but whether the ALJ's findings were supported by substantial evidence and whether any errors of law were made. *Lopez ex rel. Lopez v. Barnhart*, 336 F.3d 535, 539 (7th Cir. 2003). This Court uses the Supreme Court's definition of substantial evidence, i.e., "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

In reviewing for "substantial evidence," the entire administrative record is taken into consideration, but this Court does <u>not</u> reweigh evidence, resolve conflicts, decide questions of credibility, or substitute its own judgment for that of the ALJ. *Murphy v. Colvin,* 759 F.3d 811, 815 (7th Cir. 2014). However, while judicial review is deferential, it is not abject; this Court does not act as a rubber

4

stamp for the Commissioner. See, *Parker v. Astrue*, 597 F.3d 920, 921 (7th Cir. 2010), and cases cited therein.

## **The Decision of the ALJ**

ALJ Kumpe followed the five-step analytical framework described above. He determined that plaintiff had not been engaged in substantial gainful activity since the alleged onset date. He was insured for DIB only through December 31, 2014.[4] The ALJ found that plaintiff had severe impairments of chronic lumbar sprain; status post surgical removal of a brain tumor; obesity; major depressive disorder, NOS; anxiety disorder NOS; neurodevelopmental disorder (history of special education and current borderline intellectual functioning); and personality disorder secondary to brain surgery. He further determined that these impairments do not meet or equal a listed impairment.

At step three, the ALJ found that plaintiff had moderate limitations in understanding, remembering, or applying information; concentrating, persisting or maintaining pace; and adapting or managing himself.

The ALJ found that plaintiff had the residual functional capacity (RFC) to do light work with the following limitations:

> he should never climb ropes, ladders or scaffolds, but he can occasionally climb ramps and stairs, frequently balance and stoop, and occasionally crouch, crawl, and kneel; avoid concentrated exposure to extreme cold, moderate exposure to noise which is described as noise that is above an office environment, and he must also avoid concentrated exposure to operational control of moving machinery and all exposure to unprotected heights and hazardous machinery. He should avoid concentrated exposure to excessive vibration. The claimant is further restricted to work involving simple, routine and repetitive tasks, with infrequent changes in job location

---

[4] The date last insured is relevant to the claim for DIB only.

and job tasks. Further, he is restricted to a low production rate work or slow paced work; however, end of the day quotas are acceptable.

Based on the testimony of a vocational expert, the ALJ determined that plaintiff was unable to do his past relevant work. However, he was not disabled because he was able to do jobs that exist in significant numbers in the national economy.

## **The Evidentiary Record**

The Court has reviewed and considered the entire evidentiary record in formulating this Memorandum and Order. In view of plaintiff's arguments, the Court will omit a detailed discussion of the medical treatment.

1.   Agency Forms

Plaintiff was born in 1980 and was 33 years old on the alleged date of onset. (Tr. 287). He graduated from high school but had been in special education classes. (Tr. 281). A prior application had been denied by an ALJ on September 22, 2011. (Tr. 97).

Plaintiff had worked as a school bus driver, an order puller in a factory, a forklift driver, a maintenance person, and a retail store worker. (Tr. 281).

2.   State Agency Consultant's Mental RFC Assessment

In October 2015, acting as a state agency consultant, Kyle Devore, Ph.D., assessed plaintiff's mental RFC based on a review of the file contents. He used an electronic version of an agency form that is commonly used for this purpose in social security cases. (Tr. 123-125). The form consists of a series of questions and a list of mental activities. The consultant is asked to rate the applicant's

6

limitations in these areas. The form explains that the "actual mental residual functional capacity assessment is recorded in the narrative discussion(s), which describes how the evidence supports each conclusion." (Tr. 111).

Dr. DeVore answered "yes" to the question "Does the individual have sustained concentration and persistence limitations?" He rated plaintiff as "moderately limited" in ability to carry out detailed instructions; ability to maintain attention and concentration for extended periods; and ability to work in coordination with or in proximity to others without being distracted by them. He answered "yes" to the question "Does the individual have social interaction limitations?" He rated plaintiff as "moderately limited" in ability to accept instructions and respond appropriately to criticism from supervisors, and in ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes.

Dr. DeVore also found that plaintiff had moderate limitations in ability to respond to changes in the workplace and to set realistic goals or make plans independently.

In the section entitled "MRFC-Additional Explanation," Dr. DeVore wrote that plaintiff "does have some limitations in understanding, memory, concentration, persistence, and some social issues because of his depression and anxiety issues." He stated that plaintiff "retains the capacity for simple work."

The ALJ gave only "little weight" to this opinion. (Tr. 29).

3. First Evidentiary Hearing

Plaintiff was represented by an attorney at the first evidentiary hearing in

October 2016. (Tr. 69). A vocational expert (VE) testified. The hypothetical question was based on an RFC assessment that was less restrictive than the ultimate RFC assessment reached by the ALJ in his decision. (Tr. 72-73).

The ALJ stated that he was going to order physical and psychological consultative examinations after the hearing. (Tr. 73-74).

4. Consultative Psychological Exam

Kimberly Buffkins, Psy.D., performed a consultative psychological exam in November 2016. (Tr. 848-856). She was not furnished with psychiatric/mental health treatment records, educational records, or prior IQ testing for review. Plaintiff reported that he had been depressed since having surgery to remove a brain tumor about six years earlier.

Dr. Buffkins administered the Weschler Adult Intelligence Scale-Fourth Edition. This test resulted in a Full-Scale IQ of 72. Dr. Buffkins stated that the tests results were valid and indicated that plaintiff was functioning in the borderline range of intelligence. His ability to sustain attention, concentrate, and exert mental control was in the low average range.

Dr. Buffkins also administered the Trail Making Test. She said that "Trails Part A evaluates the process of rote memory" and described Trails Part B as "a useful tool in indicating an ability to execute and modify a plan of action." Plaintiff's score was in the deficient range on both tests, which was "consistent with his Extremely Low processing speed score on the WAIS-IV."

5. Second Evidentiary Hearing

Plaintiff was represented by counsel at the second hearing in May 2017. (Tr.

41).

An independent medical expert testified regarding plaintiff's physical impairments and limitations. (Tr. 44-50).

Dr. Michael Lace, a psychologist, testified as an independent medical expert regarding plaintiff's mental impairments and limitations. (Tr. 51-56). Dr. Lace did not examine plaintiff but testified based on a review of the record. He said that plaintiff was moderately limited in understanding, remembering, and applying information, particularly with processing speed; maintaining concentration, persistence, and pace; and adapting and managing himself. He testified that the appropriate limitations were that plaintiff should be limited to "slow paced tasks, low professional quotas daily at most due to general cognitive functioning and, specifically processing speed. He would also be limited to simple, routine, repetitive tasks due to cognitive limitations. He would be limited, as well, to job settings where there are similarly stable tasks in a location that the claimant would be limited to same location for work tasks and below average change in terms of the tasks of the job." In response to questioning by the ALJ, he clarified that plaintiff was limited to slow paced work, but that daily quotas were acceptable. (Tr. 55-56).

A VE also testified. The ALJ asked her to assume the limitations that were included in the ultimate RFC assessment. The VE testified that this person could not do plaintiff's past work. She identified three jobs that could be done by a person with plaintiff's RFC: routing clerk (DOT 222.687-022), room service clerk (DOT 324.577-010), and produce weigher (DOT 299.587-010). The VE testified to

the number of each of those jobs in the national economy. (Tr. 55-58).

On cross examination, plaintiff's counsel asked the VE where she had gotten the figures for the job numbers testimony. She replied, "I utilize a computer program entitled OccuBrowse. It's published by Vertek. With respect to incidents of work. [sic] That information is taken from state and federal government publications." Counsel did not ask any further questions about the basis for the job numbers or object to the VE's testimony. (Tr. 64).

### Analysis

Plaintiff's second argument, that the ALJ's decision was erroneous because the ALJ failed to establish that there was a reliable basis for the VE's testimony as to job numbers, merits little discussion.

Plaintiff cites several Seventh Circuit cases for the proposition that a VE's testimony must be reliable and an ALJ should not accept such testimony uncritically. See, Doc. 13, pp. 12-13. However, he has not cited a case in which the Seventh Circuit found that the ALJ erred in accepting unreliable VE testimony regarding job numbers and ordered remand for that reason in the absence of an objection by the plaintiff at the hearing.

An ALJ may rely on even "purely conclusional" VE testimony that goes unchallenged. *Barrett v. Barnhart*, 355 F.3d 1065, 1067 (7th Cir.), on reh'g, 368 F.3d 691 (7th Cir. 2004). In *Brown v. Colvin*, 845 F.3d 247, 254 (7th Cir. 2016), the Court held that the plaintiff "forfeited her argument regarding the vocational expert's testimony about the number of positions for each of the six jobs by failing to object during the hearing."

Plaintiff cites *Chavez v. Berryhill*, 895 F.3d 962 (7th Cir. 2018), but the plaintiff in that case objected to the basis for the VE's testimony about job numbers. The Court held, "Before accepting a VE's job-number estimate, the ALJ, *when confronted by a claimant's challenge*, must require the VE to offer a reasoned and principled explanation." *Chavez*, 895 F.3d at 970 (emphasis added).

Plaintiff here did not challenge the VE's testimony at the hearing.[5] His counsel merely asked the VE where she had gotten her figures. Plaintiff now raises substantive objections to the reliability of job numbers based on OccuBrowse data, but he did not raise those objections at the hearing. Counsel did not ask any follow-up question or suggest to the ALJ in any way that the OccuBrowse program was not a sufficient basis for the VE's testimony. Counsel for plaintiff first raised objections to the VE's testimony in a brief filed with the Appeals Council after the ALJ issued his decision. See, Tr. 381. Because plaintiff did not challenge the VE's testimony at the hearing, he cannot do so here.

Plaintiff's first argument fares better. Plaintiff argues that the RFC assessment was erroneous because it failed to account for his moderate limitation in maintaining concentration, persistence, or pace.

The ALJ's RFC assessment and the hypothetical question posed to the VE must both incorporate all of the limitations that are supported by the record. *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014). This is a well-established rule. See, *Stewart v. Astrue*, 561 F.3d 679, 684 (7th Cir. 2009) (collecting cases). If the ALJ

---

[5] The lawyer who represents plaintiff in this Court is not the lawyer who represented plaintiff at the ALJ's hearings.

11

finds that a plaintiff has a moderate limitation in maintaining concentration, persistence or pace, that limitation must be accounted for in the hypothetical question posed to the VE; in most cases, limiting the plaintiff to simple, repetitive tasks or to unskilled work is not sufficient to account for moderate concentration difficulties. *O'Connor-Spinner v. Astrue*, 627 F.3d 614, 620 (7th Cir. 2010).

Here, the ALJ found that plaintiff had moderate difficulties in understanding, remembering, or applying information; concentrating, persisting or maintaining pace; and adapting or managing himself at step three of the sequential analysis when determining whether plaintiff's mental impairments meet or equal a listed impairment. He noted that, while the step three determination is not a mental RFC assessment, the ultimate RFC assessment "reflects the degree of limitation the undersigned has found in the 'paragraph B' mental functional analysis." (Tr. 22).

The Seventh Circuit has repeatedly held, with exceptions not applicable here, that a limitation to simple, repetitive tasks or unskilled work does not adequately account for a moderate limitation in maintaining concentration, persistence or pace. In *Stewart, supra,* a case decided in 2009, the Court observed, "The Commissioner continues to defend the ALJ's attempt to account for mental impairments by restricting the hypothetical to 'simple' tasks, and we and our sister courts continue to reject the Commissioner's position." *Stewart*, 561 F.3d at 685. The Court has reaffirmed that position several times in recent years. *O'Connor-Spinner, supra; Yurt v. Colvin,* 758 F.3d 850, 857 (7th Cir. 2014); *Varga v. Colvin,* 794 F.3d 809, 814 (7th Cir. 2015)*; Taylor v. Colvin,* 829 F.3d 799, 802 (7th Cir. 2016); *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018), as

amended on reh'g (Apr. 13, 2018).

On February 8, 2019, the Seventh Circuit issued another decision in this line of cases, *Winsted v. Berryhill*, ___ F.3d ___, 2019 WL 494052 (7th Cir. Feb. 8, 2019). The Court stated, "Again and again, we have said that when an ALJ finds there are documented limitations of concentration, persistence, and pace, the hypothetical question presented to the VE must account for these limitations. [Citations omitted.] We have also made clear that in most cases 'employing terms like 'simple, repetitive tasks' on their own will not necessarily exclude from the VE's consideration those positions that present significant problems of concentration, persistence and pace, and thus, alone, are insufficient to present the claimant's limitations in this area.'"

In *Winsted*, at step three, the ALJ found that the plaintiff had moderate difficulty with social functioning and concentration, persistence, and pace. The RFC assessment limited plaintiff to "simple, routine, repetitive tasks with few workplace changes, no team work, and no interaction with the public." *Winsted*, 2019 WL 494052, at *3. The Court held that the hypothetical question based on that RFC assessment was erroneous because it "did not direct the expert to consider problems with concentration, persistence, and pace, which is the hypothetical the ALJ relied on for the RFC. Though particular words need not be incanted, we cannot look at the *absence* of the phrase 'moderate difficulties with concentration, persistence, and pace' and feel confident this limitation was properly incorporated in the RFC and in the hypothetical question." *Winsted*, 2019 WL 494052, at *4 (emphasis in original).

As in *Winsted*, the RFC assessment and the hypothetical question here are erroneous because they do not account for plaintiff's moderate limitation in maintaining concentration, persistence, or pace.

The Commissioner argues that the ALJ included the limitations assessed by Dr. Lace. She argues that "although the Seventh Circuit has criticized ALJs for attempting without explanation to account for deficiencies in concentration, persistence, or pace with a limitation to unskilled work, it has permitted ALJs to rely on the opinions of medical experts who offer such a limitation." See, Doc. 19, p. 11. She cites *Varga v. Colvin*, 794 F.3d 809 (7th Cir. 2015) and *Capman v. Colvin*, 617 F. App'x 575 (7th Cir. 2015), but neither case supports her argument.

In *Capman*, the ALJ limited the plaintiff to simple, routine tasks and limited interactions with others. The Court held that "Both the medical evidence and Capman's testimony support the finding that any limitations in concentration, persistence, and pace stem from Capman's anxiety attacks, which occur when he is around other people. Therefore, the limitations incorporated into the ALJ's RFC findings adequately addressed Capman's deficiencies in concentration, persistence, and pace." *Capman,* at 579. *Capman* has little or no relevance to the issue in this case.

*Varga* does not support defendant's position at all. There, the state agency consultant found that the plaintiff had moderate difficulties maintaining concentration, persistence, and pace. The ALJ's RFC assessment included mental limitations of simple, routine, and repetitive tasks in a work environment free of fast paced production requirements, involving only simple, work-related decisions

14

with few if any workplace changes.  The Seventh Circuit held that RFC did not adequately account for the plaintiff's moderate limitations in maintaining concentration, persistence, and pace.  The limitation to few workplace changes "deals largely with workplace adaptation, rather than concentration, pace, or persistence."  Further, the Court observed, "It is also problematic that the ALJ failed to define 'fast paced production.' Without such a definition, it would have been impossible for the VE to assess whether a person with Varga's limitations could maintain the pace proposed."  *Varga* 794 F.3d at 815 (7th Cir. 2015).

*Varga* actually supports plaintiff's argument.  The ALJ here did not define low production rate work, slow paced work, or end of the day quotas.  Dr. Lace, who was testifying as a psychological expert and not as a vocational expert, did not explain what he meant by those terms.  Dr. Lace's resume (Tr. 909-913) indicates that he is a practicing and well-qualified psychologist, but there is no indication that he has expertise in vocational issues.  As plaintiff argues, without some definition those terms are too vague to adequately express plaintiff's mental limitations.  There is no way to know that Dr. Lace, the VE, and the ALJ all had the same understanding of the meaning of low production rate work, slow paced work, and end of the day quotas.

The ALJ's error requires remand.  "If a decision 'lacks evidentiary support or is so poorly articulated as to prevent meaningful review,' a remand is required."  *Kastner v. Astrue*, 697 F.3d 642, 646 (7th Cir., 2012) (internal citation omitted).

The Court wishes to stress that this Memorandum and Order should not be construed as an indication that the Court believes that plaintiff was disabled during

the relevant period, or that he should be awarded benefits. On the contrary, the Court has not formed any opinions in that regard and leaves those issues to be determined by the Commissioner after further proceedings.

## Conclusion

The Commissioner's final decision denying plaintiff's application for disability benefits is REVERSED and REMANDED to the Commissioner for rehearing and reconsideration of the evidence, pursuant to sentence <u>four</u> of 42 U.S.C. §405(g).

The Clerk of Court is directed to enter judgment in favor of plaintiff.

**IT IS SO ORDERED.**

**DATE: February 15, 2019.**

s/ Clifford J. Proud<br>
**CLIFFORD J. PROUD**<br>
**UNITED STATES MAGISTRATE JUDGE**